You've got more issues on this one, right? A lot more issues on this one, yeah. Unless the court has a preference of order, I would like to be going in with what we think are the more important issues for our client, which is the 30 entries in case number 311, which the court has found were way, and actually I start with the statute of limitations. There were two cases. Wait. So we're not, that was the all country rate. Well, it's, yes. There were two exporters which Congress had initiated administrative reviews on to determine whether or not they were subject to anti-dumping duties. They were new shipper exporters of these products to the U.S. And for two of them, Congress initiated an administrative review to determine whether in fact there was anti-dumping liability for them. Commerce rescinded those reviews and published notice to that effect in the Federal Register, which in turn notified customs that those entries were ripe for liquidation and that their six month time period in which to liquidate the entries had run. For Clipper, which is one of the exporters, it had its own previous anti-dumping rate. And so those entries were liquidated at their rate. For the other exporter, well, Rauping was, I'm sorry, Rauping was the one that had its own entry. Clipper was the exporter who was a new shipper that had never exported products to the U.S. before and had no rate. One of the issues that was raised is that Clipper had waived its right to have a determination made within the six month deemed liquidation period from the date of publication of the rescission of the anti-dumping review. Okay, so just because there's so many issues, I want to make sure we're on the same page. So this is the issue where you're arguing that the statute of limitations is jurisdictional and hence there could not have been a waiver even though there was. That's correct, Your Honor. And we believe that 2415 is a mandatory statute that requires that it allows, it does not allow a company to waive its statute. And that is because the language in the statute says shall be barred? Well, that's one thing, but that kind of language has been used in other cases not related to any dumping. And has been rejected by the Supreme Court. Well, it has, but this case I think is unique because the difference in this situation is that 2415 is the culmination of a process of entering goods subject to anti-dumping duties. In 1984, the provisions of 1504D for entering goods were enacted and substantially modified to protect both importers, sureties, and other parties involved to ensure that they received a fair due process proceeding throughout in a whole anti-dumping process. There were time limits set in that, there were obligations set in that, all of which have been litigated in some way or another in this case. But they were all mandatory obligations. But those provisions are meaningless without 2415 because you can go through the whole process, take two or three years with Customs and Commerce Department and whoever's involved at the appropriate time, and at the end of it, Customs can ask, and not always nicely, that an importer waive its rights that it's had in this whole process. They're waiving rights that were established by Congress after a long time, a long period of time to write the 1504 obligations and time limits into the law. And at the end of this entire process, if 2415 is not a mandatory obligation for these entries to actually be liquidated at the end of the process, the whole process is going to be moot. And so it's going to change and eliminate rights that were created through a long legislative process. So this is more than just shall be barred and interpreting the language barred, how it applies in one statute compared to this statute. And our argument is that it has to be, in this situation, a mandatory provision because it's the culminating act of the whole administrative process from the entry of a good subject to any WD orders, and the whole process going through it, or those other provisions are moot if this is not a mandatory provision. So we think this is- Judge Eaton went through all of this. Pardon me? Judge Eaton. Is that the Court of International Trade Judge? Yes. Yeah. And he rejected. I mean, the standard, which I don't think there's a dispute over, is whether or not under Supreme Court precedent, there's some clear statement. Shall be barred, as you concede, is not enough. But so you look at, I guess, the context of legislative history, what Congress would have intended. I'm just saying, what's the standard of review, do you think, for our analysis? I mean, Judge Eaton had a very strong, you know, analysis. Is this question- I think it's an over-application for you because Judge Eaton's analysis was based on a different statute of limitations. And I believe it's a statute of limitations when it limited the private party's right to seek an extension. And this, he did not analogize this, because I don't believe this issue was actually before him in this manner. It was before him, but it wasn't argued this way, I believe. Because the decision he made analyzing, I think it was a Fujitsu case, was different. The statute was different. The obligations were different. And they did not have this underlying historical precedent developed that leads to this final conclusion of parties' rights going up to it. So he does have an analysis of it, but it's not the analysis of a statute that's like 2415. It's analysis of another statute that has different obligations at the lower levels where the process is going forward. And we argue that the 1504 obligations are automatically, at customs' whim, really, basically, applicable unless customs wants to seek a waiver and just vitiate the earlier obligations in the statute. We argue that 2414 has to also be a mandatory obligation. And if so, it will keep the entire legislative process intact. And that analysis, I don't believe, was in Judge Eaton's determination. And then there's also the, if in fact this is right, the issue of what is, and the entries are going to be liquidated, the new shipper entries are going to be liquidated. At what rate will they be determined, be liquidated? The law says that they should be liquidated at the rate asserted by the importer on importation. The government argues that the bonds that were issued assert that rate for a new shipper or importer because they put in the bond amount the highest rate that's been determined for this case, and just that is the rate asserted by the importer. But that's not the rate asserted by the importer. That amount in those bonds is required by the port director in establishing the rate of bond to be put into place. The customs regulations in 19 CFR 113 state the port director's responsibilities in establishing the amount of bonds to be established. That is a totally, that is always Hester because the port director has to protect the revenue. And at the time of a new shipper import, that new shipper does not have its own NAWD rate. It has to assert its own rate. The rate that a new shipper will assert is zero. They don't know their rate. They don't know what the rate's going to be. That's why they request commerce to do a, determine a anti-dumping review to determine what rate should be applicable to it, if any. And until that decision is made. Well, I guess that may be true. What I'm a little confused about is the district, the CIT judge referred to column 34, where the exporter, going to your point, he asserted the amount of the anti-dumping duties secured by a bond. And that was, in fact, the all country rate that we're talking about. That's not the rate asserted by the importer that is due. That is the rate that's required to be put into that column. And if you look at those technical entry summaries and the bonds, every one of them has that but it's got the word bonded in it. And it shows that that rate was not applied to the importer on importation. What happens is when the process is completed, three or four years later, and if you look at some of the bonds that are in the appendix, you'll see handwritten changes to the original type entry bond. They eliminate the bonded, they cross it out, because then at that time, they're applying the new rates. Until that time, the importer has not asserted any rate, although all that information has to be on the customs entry form. And because of that, the importer wouldn't automatically, no importer would automatically declare they owe a 377% dumping duty on products they've never imported in the U.S. That's the purpose of the Commerce Review, to determine if that's true or not. And so the customs entry documents have all the information, but a lot of the information on it initially is not that asserted by the importer of what it assumes that the liability is going to be, because it doesn't know at that time. That's the whole basis of this whole new shipper process that's been going on for years. Once a new shipper comes in, it imports goods, it's got a bond to cover it if it does owe the all-country rate at the end. But at the time of that, it doesn't know what its rate's going to be. Just like in a regular dumping review, when the importer may already have its rate, it doesn't assert any rate. It will assert an old rate if it's got an existing rate, but it's going to, even though its bond will also have possibly the ultimate, or because it had an earlier review, the last department in the Commerce Review, it's not done by a customs determination to put the existing all-country rate at the top of the bond or list it in there until the process is, the administrative review process is completed. So at this point, the importer, a new shipper importer, doesn't know what its liability is going to be. It knows that it may eventually have to pay the amount of the surety, which is the punitive all-country rate, but it doesn't know that until it's gone through the entire process. I hate to take your time with this, but I just have a question that isn't on the issue raised, but I just, there have been so many proceedings in connection with this case. This is on the notice issue, and there were some entries where you were the single surety and others where you were continuous. And in Eaton's 2015 opinion, he rejects your thing, which I think is on appeal, about the notice and the single transaction, because you haven't shown you were substantially prejudiced. But on the continuous bond entries, he says there's a question of fact, we've got to go to trial. Whatever happened to that issue? That issue is not on appeal. Did you prevail? No, it's not on appeal.  We had to go through another trial to determine how much might be liable or not be liable, and it was not an issue that either party wanted to litigate again. We were so far into this process that it just didn't make sense, so we didn't have that. But on the other issue, though, he did... Let me find it here. Let me try to look at the other issues. Well, you're almost into your rebuttal, so if you want to reply, that would be great. Thank you. Good morning, Your Honors. May it please the Court. If I may, I just want to correct the record briefly. My recollection, and I confer with someone also who has better memory than I, with respect to the continuous bond, Your Honor is correct, that was left in that opinion as potentially going to trial. But what happened with continuous bonds, because they run for a period of time and cover all entries that come in, that bond had been used up in another case. So we went back to the Court and advised the Court that, in fact, Your Honor didn't have to worry about the continuous bond or a trial on it because there was no money left in the continuous bond for the consolidated case. So that's why it went away. It wasn't that the government wasn't willing to go to trial. We were willing to go to trial for a legitimate issue, but that issue had actually passed on, so it was no longer necessary. Your Honors, with respect to our cross-appeal, there are two issues. We believe the trial court erred when it declined to award the government 1677G interest. Now, there's no dispute that the 1677G interest at issue in the consolidated court number 09491, that the government wasn't entitled to it. There was an error that had been made at the time of liquidation. But the problem is, is that when an error occurs at the time of liquidation, if that liquidation becomes final and conclusive under 1514, it becomes final and conclusive as to everyone, and that's what happened here. In fact, AHAC protested the inclusion of 1677G interest in the demand that had been made on it by the government. It, however, didn't perfect its rights and then bring an action in front of the CIT. It waited until the government brought a collection action. In that scenario, that liquidation became final and conclusive. For example, if there had been an underbilling in that liquidation, the government couldn't have come back and sought more because it would have been final and conclusive as to the government as well. So there's parity there. This court has been very clear about when things become final and conclusive. In fact, in a very similar case, the United States versus AHAC in 2017, a 2017 opinion by this court, the court found that 1505D interest that AHAC was complaining about, it had become final and conclusive because AHAC didn't preserve its rights by bringing an action before the CIT. The CIT court kind of got a little confused and actually perceived this as an action based in contract. Now, yes, the customs bond is a contract between the principal, the importer, and AHAC. I mean, there's no question there was a change of money and there was an agreement as to what was going to occur. The government's the beneficiary of that bond. But with respect to raising an affirmative defense to a final and conclusive liquidation, the fact that there's a bond is irrelevant. The fact is that the rule compels that once it's final and conclusive, you can't raise an affirmative defense that could have been raised as part of the seven factors. This isn't a question of whether the government is legitimately entitled to 1677G interest in this case. They're absolutely not under the statute. But you're saying they lost the right to challenge that. What about the Cherry Hill case? The Cherry Hill case seems to me to suggest that they're not challenging, in this case, the liquidation, but your attempt to collect the AHAC bond after the importer defaulted. So wouldn't they fall within the Cherry Hill rubric such that they're not prevented from making this assertion at this point? No, Your Honor. They would not fall within the Cherry Hill rubric. The Cherry Hill rubric was a scenario where there was a final liquidation and the government sought to reliquidate and correct something. And that's the point. There was finality under Cherry Hill. The government wasn't entitled to relitigate outside of the scope of the time period when it may relitigate. So it became final and conclusive to the government. It's final and conclusive to AHAC. And indeed, they are challenging the liquidation because they're challenging the 1677G interest, which was buckled up into the liquidation. And the rights of assurity sit in the shoes. They're not challenging the 1677G interest in the liquidation. They're challenging your right to collect it from them because the statute doesn't allow you to collect it from them. It only allows you to collect it from the importer.  Right. So if this were a case against the importer, 1677G interest would be perfectly appropriate. And suppose it was even awarded in that case, right? But then suppose the importer went belly up. If the government then turns to the surety and says, now you've got to pay, is it your view that the surety would have to pay the 1677G interest as well, even though the statute clearly exempts them from it? Yes, Your Honor. They would because they stand in the shoes of the importer. And why does the statute distinguish? Why does the statute pertain only to importers? Well, Your Honor, it doesn't pertain only to importers. There may be a misunderstanding here. There were importers who were permitted to not make a cash deposit upon which 1677G runs. However, and they could do a bond in lieu of that deposit. But there's also the possibility that a port director, say an importer did do a cash deposit and the port director became concerned and wanted additional collateral and sought a single transaction bond. In that scenario, even though that 1677G has nothing to do with respect to a bond in lieu of, the fact is, is that once something is inside of a final liquidation, the surety is required to bring in a protest, which they did, and then they have to bring in action before the CIT. If you sit on your rights, when you are capable of bringing them, you cannot then be heard to bring them as an affirmative defense because you're simply being asked to pay the bill that the importer did. The government has conceded in its yellow brief that 1677G interest only applies to cash deposits by an importer, not to bonds posted by a surety. That's correct, right? That is correct. It's true. Why is the innocent action over whether or not the government can nonetheless collect 1677G interest in the form of a bond posted by a surety? I don't understand. Yes, Your Honor, because there are two things occurring here. The surety is standing in the shoes of the importer and has a final liquidation. It could have protected itself against the final liquidation and been able to raise this as a defense, well, it would have actually brought the action itself and would have raised it affirmatively in its own action against the government saying that demand I don't have to pay because I don't have to pay the 1677G. That's why I tried to give you the hypothetical where it was actually an action against the importer where it would have been properly assessed. If there was a cash deposit by the importer, the 1677G interest would have been properly assessed. And then suppose the importer goes belly up, the government has every right to collect then against the surety, but the surety has a bond posted. It seems that the surety ought to be allowed at that point since it had not been the defendant, I don't know if it's technically a defendant, but it hadn't been, the surety had been not litigating earlier, right, if it was the importer the government was going after. And the surety steps in at that late date after 1677G interest is already on the table. I feel like they should have a right to say no under the statute. It can't be sought from us. Well, actually, under that hypothetical, Your Honor, with the importer who blows up, the government then turns to the surety for payment. At that point in time, there would be a demand that's sent out, and then the surety, because that's what triggers everything with the surety, the surety comes back, files a protest, says, hey, you have 1677G in here, I'm not paying it. And we say, yay or nay, if we deny that protest, the surety says, fine, I'll see you in the  I'll eat this decision unquestionably. So you're saying, in my hypothetical, they wouldn't be stuck with the 1677G, because they'd have an opportunity thereafter to contest it. That's correct, Your Honor. It's the finality issue under 1514 that's driving this, because the 1677G is a charge or exaction. Erroneously or not, it nevertheless is a charge or exaction. And AHAC had the ability to prevent that problem from arising, and they failed to do so. Your Honor, secondarily. Counsel. Yes. So listening, this is very interesting, listening to the argument and the rigor of the government's position makes me really wonder why the statute of limitations shouldn't also be sufficiently rigorous. Your Honor, statute of limitations should be sufficiently rigorous. However. And not waivable. You're saying that all of these other actions are final. It's over. Well, Your Honor, statutorily under 1514, you end up with final and conclusive events. With respect to waiver of a statute of limitations, a statute of limitations would be a final event for the government, but for a waiver. And the Supreme Court has said, the only time you can't waive is when it goes to the jurisdiction of the court, because parties are not entitled to tell the court what its jurisdiction is. So when there's a scenario where if someone, say the government were to receive a waiver, and the provision is one that absolutely no one cares. It doesn't care how many waivers you have. It is a jurisdictional provision. The statute of limitations is almost like a statute of repose. It's a locked door. You can't move it, and that's that. The scenario we have here with 2415 is exactly not that. It uses the language, shall be barred, which the Quay Fund case has reviewed. And indeed, this court in Forge versus the United States in 2016 went through a complete analysis of what it is. There's a structure here. When are statute of limitations jurisdictional so that it doesn't matter if you're sitting with what you think is the golden ticket to a waiver. It doesn't matter. It's jurisdictional. You can't waive jurisdiction. It went through that analysis and found that statute similar to the one here. And I'm unaware of any case, and I believe this will be the first case that we'll weigh in on this, with respect to 2415A in this context. But in the Federal Tort Claims Act, which uses similar language as the Quay Fund analysis. But do you think the answer here is compelled by the Supreme Court precedent? Yes, Your Honor, I do. But I also believe it's compelled by this court's precedent adopting Quay Fund in the Forge versus United States and, indeed, some other cases that this court has ruled on. So, yes, I believe this court is consistent with the Supreme Court and that when it comes to the type of claims processing language that is found in 20- But your friend made an argument here and in the briefs that, yes, I mean, the Supreme Court hasn't absolutely foreclosed it. It just says you need a clear statement. And now it's up to us to figure out what kind of statement is sufficiently clear. So your friend makes an argument that the circumstances of this statute and everything else going on here makes it sufficiently clear to be a jurisdictional statute. So what's your response to that? I mean, there is wiggle room here, right? Right, Your Honor. My response to that is that it is absolutely not jurisdictional. There are other issues in this case that clearly AHAC is passionate about. But the fact of the matter is is that AHAC had an opportunity to address all of those issues in the front position as a plaintiff, and it chose not to. It also had the right to say to the government, you know what, thanks but no thanks on the waiver. I think due process and compelling issues with respect to, you know, ADD entries coming in and having them deemed liquidate, I think all that is so important, I am not going to waive that. They didn't do that. This is a very difficult issue because as far as I can tell, no statute of limitations has ever been cited. I haven't found any which says however you can waive the statute of limitations. Just for whatever reasons here they say that there was a certain subtle pressure for waiver that the statute of limitations can be waived. And yet we have a particular case on particular facts where on the equities it was held waivable. But you're saying that any statute of limitations doesn't mean what it says? As long as you can persuade someone for whatever reason or for no reason or ignorance to waive it, that can't go that far. Sure, Your Honor, it absolutely can because the only thing that stops it is if it's jurisdictional because no one can tell the court what to do. However, a party can enter into any rights that it wants to enter into. And when one waives a statute of limitations, all one is saying is if and when you sue me and you sue me too late, I can't raise that as an affirmative defense. That's a waivable defense under the rules. If you forgot to raise it in the first instance, it's waivable. So I understand the Supreme Court case. And whether I like it or not, I'm stuck with it, right? You can't have liked it because the government was completely opposed to the position the Supreme Court ultimately adopted. It favors you here, but it was not a position the government thought correct in the Supreme Court briefing. That being said, in that case, it was even worse. It didn't say forever barred. Am I remembering it right, the word forever? Forever barred. And the Supreme Court nonetheless concluded that was not a clearly expressed intent by Congress for it to be jurisdictional. Forever barred. I mean, if I talk that way to my children and they turn around and did something thereafter, I mean, I just can't imagine what the consequences in my household would be. My former law clerk could probably tell you how that would go over in our chambers. Not good. Not good. I think with respect to forever barred, because it's limited to activities by a party and has nothing to do with the court, see, because it doesn't say in that the court shall forever bar it. It says the claim shall be forever barred. And that's the distinction. And unless Congress chooses to marry, because right now- So what would be the magic language? I'm just curious because I didn't get it out of the Supreme Court opinion. If forever barred isn't enough to make it jurisdictional, and what the Supreme Court said in that case was it has to be clearly stated, I'm not sure what it means because I'm struggling in my own mind to come up with a clearer way to state it than to use the term forever barred. And what made me think of this was just Newman's question. Are you saying that in order for something to be jurisdictional, Congress would have to say this is forever barred and this is jurisdictional or forever barred, and that means you can't waive it? I mean, is that the kind of statement that is now required in light of the Supreme Court jurisprudence? I believe a statement somewhere in that neighborhood, something in the provision that says the court can't hear it, the court cannot accept it, the court must dismiss it. Those types of language in that type of a statute of limitations heading, I believe that would convey congressional intent that this is not waivable and it's inextricably intertwined to what the court does. Because what we're dealing with right now is just what the parties are doing. And of course the parties, the one thing the parties can't do, for example, if you bring your action after a protest is denied, on 181st day, there's no jurisdiction because that's a jurisdictional predicate and the United States government doesn't waive that. And so that is a scenario where that doesn't happen, but I believe that language actually in the statute of limitations provision. What about in this case, I may not remember the facts right, but I thought that this statute of limitations was actually in the section conferring jurisdiction, wasn't it? It was actually within the rubric of the section that confers jurisdiction. Would that, by implication, or is that not enough because it's not a clear statement? Even though it's in the jurisdiction section. Well, this is not within the jurisdiction section. Okay, but if it had been, I understand it wasn't. So, for example, our jurisdiction for the CIT is 28 U.S.C. 1581A, and the whole family, A through J. Well, suppose it had been in that section, the header of which was jurisdiction, and then this thing said shall be barred with nothing else. It's unclear, but one of the things that the case law seems to suggest is that when Congress has designed a scheme where jurisdiction is in one area and statute of limitations is in another, that that is an indication that this is a waivable defense. And so, I think you would have to marry the two. I got it. Kind of odd here. I presume all this statute was enacted long before the Supreme Court's opinion in 2015. So, it wasn't a circumstance where Congress was aware of what the Supreme Court was about to require of them in terms of clarity, right? Well, that's in Quay-Fon, but I believe that, you know, I can't tell you that there are Supreme Court cases prior to that, but Congress is expected to know what all of its courts are doing, and so the Quay-Fon case would have worked its way up, and if even before it got to the Supreme Court, I mean, Congress could have said, oh, maybe this is a little too ambiguous, we don't like the way we've drafted it, let's change this. In that scenario, perhaps, but unfortunately, I would be guessing, and I don't want to speculate to you, Your Honor. But we're way over time.  Thank you, Your Honor. I just go back to what I had said originally. In this particular situation, 2415 is intricately connected to the import procedures under 1504 that were established by Congress to protect sureties, to protect importers, and to protect the government. And if 1504, 2415 is not a mandatory requirement for jurisdiction, to give the court jurisdiction, and it shall be barred, it's depriving the government jurisdiction to have a case that it has extended improperly beyond the statutory timeline. Can I just ask you a side question with regard to that, and that's to the whole waiver notion, which the government referred to. I mean, we're here because somehow you felt that you didn't have a choice, right, and that you had to waive it. I mean, otherwise, you come in, you have a choice. You sort of have to live with the consequences. So what are we to make of that aspect of this, to take your word for the fact that you were worried about what the government might do in another circumstance, so you were sort of involuntarily required to waive it? Well, I've been representing clients for a long time in this area, and I know every time one of them is faced with a decision where the government is trying to impose something on them or asking them to waive something so they can have a little more time to do it, every time they acquiesce to it because they're concerned that if they don't, it's going to precipitate a more quick decision against them. And so it's not an impractical thing. It's not in the law. It's not anything. I just know from practice that it happens consistently. I appreciate that. I just don't know what we're supposed to do with that. Well, I think what you do with it is you look at the context of the anti-dumping procedures, the timing involved, the obligations involved, the notice obligation you mentioned, which AIPHA provided notice arguments which the government didn't address, so they waived their opportunity to do that. But the point is that it was a long process to create and get all the parties and the government to create the 1504 procedures that are mandatory procedures. You can't waive a failure to liquidate within six months when an administrative review is filed. But you can waive the right, the six-year period, but when the customs comes and asks you to file a lawsuit against them for the part that they couldn't waive. My point is that that process that was created over several years of congressional consideration is now totally irrelevant if, in fact, 2415 in this situation is not also mandatory to prevent the government from filing a lawsuit when it's gone through all that other process that Congress has established. Thank you. Well, I guess technically you've exceeded your time. Technically, I owe you time, I believe you're right. I'm sorry. Just briefly on the issue that was just raised with respect to 1504 procedures, that's correct. No one can change a statute. But you can waive statute of limitations. But more significantly, 2514 is not just limited to customs cases. Is this the cross appeal? Sorry? Are you talking about the cross appeal? No. You're limited to the cross appeal. You don't get the last word on the appeal. She made that clear. Oh, I'm sorry. Well, that's just the way, actually, litigation works. Forgive me, Your Honor. I actually misheard what was said. I thought you had said it's okay just to talk to this. No. Okay, then. Thank you. Thank you, Your Honors. I said all I needed to say on my cross appeal. Thank you. We thank both sides, and both cases are submitted.